CHESAPEAKE & O. RY. *v.* BOSTON.

[No. 28,405. Filed November 17, 1948. Rehearing denied November 23, 1948.]

*Warner, Clark & Warner,* all of Muncie, and *Albert H. Cole,* of Peru, attorneys for appellant.

*George P. Ryan, R. Stanley Lawton,* both of Indianapolis, *Clarence E. Benadum,* of Muncie, *Ross, McCord, Ice & Miller,* all of Indianapolis, (Of Counsel) attorneys for appellee.

Per Curiam

*Order to transfer vacated.*

## DISSENTING OPINION.

EMMERT, J.—This case was previously transferred to this court from the Appellate Court, and now the majority of this court is of the opinion the order of transfer should be vacated. For the opinion of the Appellate Court see *Chesapeake & Ohio Ry. Co.* v. *Boston* (1947), 118 Ind. App. 526, 75 N. E. 2d 194. Because I feel that under the prior well decided precedents in this state there is no reversible error in the record, and that the case was fully and fairly tried, I must dissent from the action of this court, and in such case a written opinion is proper. *In re Petitions to Transfer Appeals* (1931), 202 Ind. 365, 174 N. E. 812; *Hunter* v. *Cleveland, etc., R. Co.* (1930), 202 Ind. 328, 174 N. E. 287; *Myers* v. *Newcomer* (1930), 202 Ind. 335, 174 N. E. 290; *Sluss* v. *Thermoid Rubber Co.* (1930), 202 Ind. 338, 174 N. E. 291; *Burkus and Heyverestes* v. *State* (1931), 202 Ind. 341, 174 N. E. 292. This is the second time this litigation comes before this court, the previous appeal being decided in *Boston* v. *Chesapeake & O. Ry. Co.* (1945), 223 Ind. 425, 61 N. E. 326.

Before the second trial the plaintiff filed a second amended complaint for the same grade crossing col-

lision, which occurred on November 8, 1940, where the appellant's three railroad tracks cross Brady Street in the City of Muncie, Indiana. This complaint among other things alleged that on said date the crossing "was rough and full of holes and in such condition that a driver of an automobile had to pay great attention to said crossing." That the appellee Boston was driving north on Brady Street at approximately 9:30 o'clock at night and looked both ways and listened for any warning before entering the crossing but that when he was on the northernmost track he was suddenly struck by railroad cars being backed in a westerly direction by the appellant. The alleged negligent acts in the operation were: (a) failure to display any light, (b) failure to ring any bell or give any audible warning, (c) operation within a residential and thickly populated district at a negligent speed of thirty to thirty-five miles per hour, (d) failure to blow the whistle three times beginning ninety yards from the crossing and failure to ring the bell continuously from said point to the crossing, and (e) failure to have any lookout at the crossing.

The jury returned a verdict for the appellee in the sum of $5,000, and from the judgment thereon this appeal is taken. The error assigned here is the overruling of appellant's motion for a new trial which assigned as errors therefor: First, the verdict is not sustained by sufficient evidence; second, the verdict was contrary to law; third, the damages were excessive; and, fourth, error of the trial court in giving plaintiff's requested instructions Nos. 1, 2, 4, 5, 6, 7, 8, and error in giving the court's own instruction No. 14 and error in refusing to give appellant's requested instruction No. 26.

The evidence when considered most favorable to

the appellee, warranted the jury in finding that on the date alleged in the night time appellee was driving north on Brady Street in Muncie approaching a four-track multiple railroad crossing, which was rough and had "dips you could put a spittoon in." East of the crossing the tracks curved to the south and farther east curved to the north in the form of an S. On approaching the crossing from the south the view east was obstructed by some box elder trees and high weeds. The appellee stopped before driving on to the crossing, looked both ways and listened, but saw and heard nothing, and as he was driving across the fourth track, a cut of thirteen cars with an engine on the east end backed from the east into his automobile, and shoved it westward along that track for a distance of about 60 or 70 feet, with a coupler of the back car projecting through the side of his automobile, the force of the collision knocking the appellee about in the automobile "like a rubber ball" and striking his head against the coupler and the top, throwing his car over in the south track, thereby causing him to sustain a post concussion syndrome and a permanent post-traumatic neurosis.

The entire record in this case consisting of more than 500 pages has been examined, and there is no merit in appellant's contention that the verdict was not sustained by sufficient evidence or was contrary to law or that the damages awarded are excessive.

There was no error in giving appellee's requested instruction No. 1, which recited the statute requiring sounding a whistle when an engine is not less than 80 nor more than 100 rods from a grade crossing and to ring the bell continuously from such distance until the crossing was passed. The instruction further recited the provisions of an ordinance of the City of Muncie

prohibiting locomotive whistles from being sounded within the city, with the proviso, however, that whistles may be sounded where necessary to protect life or property. The instruction concluded that "if you (the jury) further find that it was necessary, under the circumstances there existing as shown by all of the evidence, to sound said whistle in order to protect life or property, then you are instructed that such failure constituted negligence on the part of the defendant." The jury had the right to find that the ordinance did not relieve the defendant of the duty to signal under the facts in this case. *Pittsburgh, etc., R. Co.* v. *Terrell* (1912), 177 Ind. 447, 95 N. E. 1109. There was evidence in the record which would warrant a jury in believing that the engine was at least 1,565 feet from the crossing before the cut of cars was backed into appellee's automobile. Nor was it necessary for the complaint to allege a violation of the statutory duty in specific words of the statute. *Lake Erie, etc., R. Co.* v. *Howarth* (1919), 73 Ind. App. 454, 124 N. E. 687, 127 N. E. 804; *Pittsburgh, etc., R. Co.* v. *Hoffman* (1928), 87 Ind. App. 619, 155 N. E. 622. The second amended complaint did charge a failure to ring any bell and to give any audible warning to the plaintiff, and the failure to give the statutory signals was properly in issue.

The appellant's objections to appellee's requested instructions No. 2 and No. 7 are so general that they fail to comply with Rule 1-7 of this court requiring the objections to instructions to be specific. When objections are indefinite no available error is presented upon appeal. *Allman* v. *Malsbury* (1946), 224 Ind. 177, 65 N. E. 2d 106; *Mackey* v. *Niemeyer* (1943), 113 Ind. App. 10, 44 N. E. 2d 520.

By plaintiff's requested instruction No. 4 the jury

was told in substance that if they should find that as the train was backing, because of the location of the engine signals could not be heard at the crossing, and that the defendant was aware of that fact, that it then became the duty of the defendant "to give reasonable and timely warning of the approach of the train to said crossing in some other way if you further find from all the evidence such warning was required in the exercise of ordinary care." The giving of the statutory signals would still not relieve the railroad company from its common law duty to use due care under all circumstances in the operation of its train across the grade crossing. If in the exercise of ordinary care other warning was required and was not given, a violation of such a duty would be negligence, and the determination of this question was properly left to the jury. *Pittsburgh, etc., R. Co.* v. *Macy* (1915), 59 Ind. App. 125, 107 N. E. 486; *Chicago, etc., R. Co.* v. *Biddinger* (1916), 63 Ind. App. 30, 113 N. E. 1027; *Pittsburgh, etc., R. Co.* v. *Tatman* (1920), 72 Ind. App. 519, 122 N. E. 357; *Pittsburgh, etc., R. Co.* v. *Terrell* (1912), 177 Ind. 447, 95 N. E. 1109. Nor was the railroad company relieved of its duty to use due care because it was switching. *New York, etc., R. Co.* v. *Shields* (1916), 185 Ind. 704, 112 N. E. 762.

Appellee's requested instruction No. 6 in substance informed the jury that it was the plaintiff's duty to look and listen "at times and places and in a manner which a reasonably careful and prudent man in the same or similar circumstances would have looked and listened." This put upon the plaintiff the duty of using due care, and by appellant's instruction No. 19 which was given to the jury, the plaintiff was required to "select a place and time to look and listen where looking and listening would be reasonably effective."

The jury was correctly instructed on the duty to look and listen.

Appellee's requested instruction No. 8 was limited to "injuries received as a proximate result of defendant's negligent acts," and therefore was not subject to objection for failure to embody proximate cause, nor could the appellant complain because the instruction was limited to a consideration of only the elements enumerated in the instruction. The appellant was not in a position to complain because other elements of damages were not enumerated. If an instruction is favorable to a defendant by reason of being too limited under the law applicable, the defendant is not harmed. *Northern Indiana Power Company* v. *West, Admx.* (1941), 218 Ind. 321, 32 N. E. 2d 713. See also *Jones* v. *Cary* (1941), 219 Ind. 268, 37 N. E. 2d 944.

Appellant objected to the court's definition of proximate cause as embodied in instruction No. 14 given on the court's own motion. The instruction did give a correct definition of proximate cause, but included therein an abstract statement of the principles of law governing intervening agency, which did not arise under the issues and evidence in this case. It is difficult to see how the appellant could have been harmed by an instruction which placed an additional burden upon the appellee. *Northern Indiana Power Company* v. *West, Admx., supra; Jones* v. *Cary, supra.* From an examination of the entire record it is apparent that the error, if any, was harmless to the appellant, and the case should not be reversed under such circumstances.

There was no error in refusal of the court to give to the jury appellant's requested instructions numbered 1, 6, 22 and 26. Instruction No. 1 is a peremptory instruction for the jury to return a verdict

for the appellant, and this has already been discussed. Instructions No. 6 and No. 22 were already covered by other instructions given in the cause, and it is not error to refuse instructions when another correct instruction has been given on the subject-matter. *Gerking* v. *Johnson* (1942), 220 Ind. 501, 44 N. E. 2d 90; *Keeshin Motor Express Co.* v. *Sowers* (1943), 221 Ind. 440, 48 N. E. 2d 459; *Adkins* v. *Poparad* (1943), 222 Ind. 16, 51 N. E. 2d 476. Instruction No. 26 in substance would have instructed the jury as a matter of law that there would be no negligence in the failure to whistle three times beginning 90 yards from the crossing, and its effect would have been to relieve the appellant of the duty to use due care under all circumstances in the matter of giving the whistle signals. *Pittsburgh, etc., R. Co.* v. *Rushton* (1925), 90 Ind. App. 227, 148 N. E. 337, 149 N. E. 652; *Pittsburgh, etc., R. Co.* v. *Macy* (1915), 59 Ind. App. 125, 107 N. E. 486; *Chicago, etc., R. Co.* v. *Biddinger* (1916), 63 Ind. App. 30, 113 N. E. 1027; *Pittsburgh, etc., R. Co.* v. *Tatman, supra.*

The appellant especially complains of the appellee's requested instruction No. 5 which was given to the jury and said:

"You are instructed that if a railroad crossing is especially dangerous to travelers on account of its locality or because the track is partially obscured, or by reason of such other facts and circumstances as are shown by all the evidence, the railroad company must exercise such care and take such precaution as the nature of the crossing requires, and failing in this it is guilty of negligence."

The second amended complaint alleged as a circumstance at the scene of the collision that the crossing was located in a residential and thickly populated

district, and that the track was rough and full of holes. ". . . The use of a crossing by the public, and other attendant circumstances, may impose upon the company the duty of exercising care proportionate to the known danger, and hence in a sense a greater degree of care for the safety of the public than is required at some other crossing not so perilous and in less frequent use by travelers, *which at all events is only ordinary care. . . .*" (Italics supplied.) *Cleveland, etc., R. Co.* v. *Starks* (1910), 174 Ind. 345, 350, 92 N. E. 54. "As Professor Smith puts it, there are no degrees of care, as matters of law; there are merely different amounts of care, as matters of fact." Harper, *Torts,* 171, § 75. See also *Union Traction Co.* v. *Berry, Admr.* (1919), 188 Ind. 514, 121 N. E. 655, 124 N. E. 737; *Jones* v. *Cary, supra.*

But the appellant particularly objects to this instruction because it involved the circumstances that the track at the crossing may have been partially obscured. The second amended complaint did not plead any obstruction on the east side as the crossing was approached from the south. This necessitates an examination into the law concerning negligent injury to persons and the pleading thereof as developed under the authorities. ". . . Actionable negligence consists of the three elements of (1) a duty imposed by law to do or not to do a certain thing, (2) a violation of that duty by doing the prohibited thing, or by failing to do the thing commanded, and (3) an injury proximately caused by such violation of duty. . . ." *Terre Haute, etc., Traction Co.* v. *Phillips* (1921), 191 Ind. 374, 382, 132 N. E. 740. See also *Baltimore, etc., R. Co.* v. *Burtch* (1922), 192 Ind. 199, 204, 134 N. E. 858. Facts were alleged which, if proved, constituted the appellee a traveler upon a public highway. As a

matter of law the railroad company was under a duty to use due care or ordinary care or reasonable care under all the circumstances of the particular situation to avoid injuring him. *Pittsburgh, etc., R. Co.* v. *Arnott, Admx.* (1920), 189 Ind. 350, 357, 126 N. E. 13; *Cleveland, etc., R. Co.* v. *Starks, supra; Northern Indiana Power Company* v. *West, Admx., supra; Union Traction Co.* v. *Berry, Adm., supra.* As was said in *Watson* v. *Brady* (1933), 205 Ind. 1, 12, 185 N. E. 516, 520:

> "Whenever a railroad crossing is for any reason particularly dangerous, it is not a question for the jury to decide whether or not a railroad company should provide signalling and safety devices at any particular crossing, but the jury may consider the fact that there were no devices or watchmen together with all the other circumstances surrounding the crossing such as the near situation of houses, trees, vegetation and the like, and the frequency with which travelers pass over the crossing in order to determine whether or not the operation of the car in the manner and at the speed that it was operated, was negligent."

It was not necessary for the appellee to aver in his complaint the existence of this duty, but he was required to allege a violation of it which is done when an act or omission is alleged to have been negligently done or omitted. *Wellington* v. *Reynolds* (1912), 177 Ind. 49, 52, 97 N. E. 155. It has long been too well settled in this state to require citation of authority that a general allegation of negligence in a complaint is good against a demurrer. If the defendant wishes a more particular statement of the surrounding circumstances of the particular situation he is required to file a motion to make the complaint more specific.[1]

---

[1] This is especially true since the enactment of § 2-1005, Burns' 1946 Replacement (Acts 1913, ch. 322, § 1, p. 850; Acts 1915, ch. 62, § 1, p. 123) concerning motions to make more specific.

*Pittsburgh, etc., R. Co.* v. *Arnott, Admx., supra,* at page 363; *Jones* v. *White* (1883), 90 Ind. 255, 256, 257. A fortiori in the absence of such a motion it is not necessary to set out in detail all the circumstances which make the act negligent. 1 Watson's *Works Practice* 244, § 360; 1 Lowe's *Works' Indiana Practice* 389, § 12.37.

The manner of the pleading of negligence is of more than passing importance to the legal profession of this state, and since the majority action cannot be squared with the many authorities generally considered as the law in such cases, the exact language of some of the opinions becomes persuasive.

> ". . . The complaint would have been good had all the descriptive and incidental facts been stricken out, and it stood upon the general charge that appellee negligently ran its car against appellant's decedent, thereby killing him. This would furnish the predicate for proof of all incidental facts and circumstances both of commission and omission, which would fairly tend to establish the primary fact charged, whether such incidental facts and circumstances were or were not set forth specifically in the complaint." *Dieckman* v. *Louisville, etc., Traction Co.* (1910), 46 Ind. App. 11, 19, 89 N. E. 909, 91 N. E. 179.
>
> "As a matter of pleading, it is not necessary to state all of the conditions and all of the circumstances which may be taken into consideration in determining whether ordinary care required appellant to foresee and provide against the danger of fire in the manner charged in the complaint. Where an act is alleged to have been negligently done or negligently omitted, the conditions and circumstances under which it was done or omitted are not necessary in a pleading for the reason that it is not the province of the court to judge from such conditions and circumstances whether ordinary care required the act to be done or omitted. That is the peculiar province of the jury. The duty to use care in favor of appellee being

shown, it is sufficient to charge that the acts or omissions specified were negligently done or omitted. The general duty to use care in favor of the plaintiff which arises as a matter of law from the relation between the parties as shown by the complaint is broad enough and comprehensive enough to include every specific act that ordinary care requires in the discharge of such duty. When the general duty to use care is shown an allegation that ordinary care required the performance of a particular act is sufficient to bring such act within the scope of the general duty imposed by law. An allegation that an act was negligently done or negligently omitted is equivalent to an allegation that the defendant failed to exercise ordinary care in the discharge of this duty. Opinion on petition for rehearing in *Tippecanoe Loan, etc., Co.* v. *Cleveland, etc., R. Co.* (1915), 57 Ind. App. 655, 106 N. E. 739." *Belt R., etc., Co.* v. *McClain* (1915), 58 Ind. App. 171, 176, 106 N. E. 742.

"It is not, generally speaking, necessary in actions for negligence that the complaint set forth the circumstances which tend to show negligence. It is sufficient to allege generally the doing of the act that led to the injury, and that it was negligently done. . . ." *Knoefel* v. *Atkins* (1907), 40 Ind. App. 428, 434, 81 N. E. 600.

"When an act is alleged as having caused the injury complained of, it is sufficient to state that such act was negligently done, without setting forth the particulars of the negligence or the circumstances which made it negligent. *Ohio, etc., R. R. Co.* v. *Selby,* 47 Ind. 471; *Duffy* v. *Howard,* 77 Ind. 182; *Boyce* v. *Fitzpatrick,* 80 Ind. 526." *The Ohio and Mississippi Railway Company* v. *Engrer* (1892), 4 Ind. App. 261, 264, 30 N. E. 924.

"It has often been held by this court that a general charge of negligence is sufficient as against a demurrer, but if a defendant desires a more specific charge he is entitled to it upon motion, if made in due season. But the rule has its limitations. A plaintiff is required to charge his cause of action in direct and certain terms, yet he is not required to go into an elaboration of details be-

yond what is reasonably necessary fully and distinctly to inform the defendant of what he is called upon to meet. *Alleman* v. *Wheeler* (1885), 101 Ind. 141." *Pittsburgh, etc., R. Co.* v. *Simons* (1907), 168 Ind. 333, 339, 340, 79 N. E. 911.

". . . And it is, in general, sufficient to allege that the injury was produced by the negligence of the defendant, in a specified act or omission, without stating the particulars of the negligence. *Indianapolis, etc., R. R. Co.* v. *Taffe,* 11 Ind. 458; *Indianapolis, etc., R. R. Co.* v. *Keeley's Adm'r,* 23 Ind. 133." *Boyce* v. *Fitzpatrick, supra,* at p. 528.

A fair construction of the instruction leaves no doubt that the term "partially obscured" was referred to as a condition or circumstance at the place of the collision. The instruction does not state that the railroad company would be guilty of negligence if it failed to exercise reasonable care to cut the weeds and trees or remove the obstructions. If the instruction had been so drafted, there would have been merit in appellant's contention. Failure to exercise due care in the doing or omission of an act which is charged as a breach of the duty is not to be confused with all the circumstances of the particular situation which is a part of the standard for conduct to determine whether it is negligent or not. It is to be noted that the second amended complaint did not charge the railroad company with the failure to exercise due care in maintaining the crossing, but as one of the circumstances of the location it did allege that the crossing "was rough and full of holes and in such condition that the driver of an automobile had to pay great attention to said crossing."

In this case the appellant did not file any motion to require the complaint be made more specific in any respect, nor did it file any demurrer. At the trial five

witnesses testified concerning the obstruction to the view to the east as a traveler approached the crossing from the south. No question is presented here by the record concerning the admissibility of this evidence. In fact counsel for appellant at the trial took the position that testimony was proper as to the obstructions. During the direct examination of the witness Edna Williamson the following answer and statement by counsel for appellant occurred: Answer: "There was a tree, and you always had to practically . . ." Objection: "I object to that. She can tell what obstructions were there." The appellant in this appeal claims the obstructions were not in issue, but it invited the evidence, and waived the alleged error.

The third specification of negligence was that, "The defendant operated its cars within a residential and thickly populated district at the unreasonable and negligent speed of between thirty and thirty-five miles per hour." In legal contemplation this was a charge the defendant failed to exercise due care or ordinary care or reasonable care under all the circumstances of the particular situation to avoid injury to the plaintiff by operating its train at an unreasonable speed of between thirty and thirty-five miles per hour. The plaintiff was not bound to prove that the speed was from thirty to thirty-five miles per hour, but all he was required to prove was that the speed at which it was operated was an unreasonable speed and a violation of due care. *Nashville, C. & St. L. Ry.* v. *Prince* (1925), 212 Ala. 499, 103 So. 463; *Waller* v. *Graff* (1923) (Mo. App.) 251 S. W. 733. Under all the circumstances of this collision it may have been negligent for the railroad company to operate its cut of cars at even 5 to 8 miles per hour, which was the testimony of the various members of the train crew on speed. This

was a matter for the jury to find under proper instructions by the court.

The jury was not limited to the opinions expressed by the train crew as to the speed, but it had the right to take other facts and circumstances into consideration in determining just what the speed of the train was at the time of the collision. W. P. Monahan, the engineer, testified that the steam was off before the west car arrived at the crossing. Other members of the train crew testified that the force of the collision broke the air line and set the air brakes so that the air line had to be bled before the train could be moved after the collision. The head brakeman testified that the front end of the lead car moved 50 to 60 feet beyond Brady Street before it stopped. Brady Street was 12 feet wide. When considering the width of the defendant's automobile and the fact that it was hit in the center of the intersection, the jury had the right to infer even from the defendant's evidence that the train moved approximately 68 feet before it stopped. Appellee's testimony was that it was 60 to 70 feet. From these facts the jury had the right to infer that the speed of the train at the crossing was much more than 5 to 8 miles per hour and further to find in view of the distance the cut of cars went after the air line was broken, that such speed was a negligent speed within the allegation of the complaint. The obstructions to the view of this cut of cars as it approached the crossing was a circumstance affecting the reasonable speed and was properly in evidence as admitted on the trial by counsel for appellant, and the instruction was correct under the pleadings and evidence in this cause.

Even if it be conceded that all the circumstances of the collision should have been set forth in the com-

plaint as a matter of good pleading, yet this should not necessitate a reversal of the judgment. In *Prudential Ins. Co.* v. *Ritchey* (1918), 188 Ind. 157, 119 N. E. 369, which is the leading case upon the matter written by Judge Lairy, the court said:

> ". . . The more recent decisions hold that where the record shows that evidence has been introduced as to an essential fact not pleaded, and such fact has been determined under the evidence, the judgment rendered will not be reversed on account of such defect in the pleading. In conformity to our statutes on the subject the pleading is deemed to be amended in such a case so as to conform to the proof. § 700 Burns' 1914, § 658 R. S. 1881; *Noble* v. *Davison* (1912), 177 Ind. 19, 96 N. E. 325; *Union Frat. League* v. *Sweeney* (1915), 184 Ind. 378, 382, 111 N. E. 305. These statutes and decisions modify the old rule so as to permit a judgment to be upheld on appeal on the strength of facts proved which were not alleged. . . ." (p. 164.)

This case has never been overruled and conforms with the intention of the legislature in enacting § 2-3231, Burns' 1946 Replacement (Acts 1881 (Spec. Sess.), ch. 38, § 659, p. 240).

Moreover, in the previous appeal of this case *(Boston* v. *Chesapeake & O. Ry. Co.* (1945), 223 Ind. 425, 432, 61 N. E. 2d 326), in considering whether fright and shock accompanied by physical injury were in issue although the complaint alleged no physical injury, this court, in an opinion by O'Malley, J., said:

> "The complaint was not questioned below by motion or demurrer, but here it is asserted that it does not state a good cause of action. If the matter had been submitted to the jury, and a verdict had been returned for the appellant, on appeal this court would have considered the complaint as amended to conform to the evidence. There is no showing of any objection to the evi-

dence as admitted, and in this opinion we are concerned with the evidence and not with a pleading that may have been subject to some action by motion or otherwise. . . ."

I am unable to see why the same principle should not extend to the obstructions to the view at the crossing as a part of the circumstances under which negligence must be determined, even if the many authorities previously discussed were all erroneous in holding that it is not necessary to plead all the circumstances at the scene of an accident, in the absence of a motion to make the complaint more specific.

The judgment of the trial court should have been affirmed. Gilkison, J. concurs.

NOTE.—Reported in 82 N. E. 2d 249.