CITIZENS INDEPENDENT TELEPHONE COMPANY *v.*
DAVIS ET AL.

[No. 18,036. Filed October 17, 1950. Rehearing denied December
7, 1950. Transfer denied March 19, 1951.]

(See 229 Ind. 217, 97 N. E. 2d 490, for opinion of Supreme Court denying petition to transfer.)

*Kiplinger & Kiplinger,* of Rushville, for appellant.

*Vance M. Waggoner,* of Rushville, for appellees.

CRUMPACKER, J.—The appellees are the widow and minor child of one Ralph Davis who was struck and killed by lightning in the course of his employment with the appellant. They were awarded compensation by the Full Industrial Board of Indiana upon the following evidence which, in its essential details, is not disputed.

At the time said Davis was killed there was a cluster of frame buildings known as Diekman's Camp located about three and one-half miles west of Rushville, Indiana. Said "camp" consisted of Diekman's residence, a number of small cabins and a tool house all of which were supplied with electricity through a transformer and the usual lead wires running from a distribution pole to the various buildings including said tool house which had two electric outlets in the form of light sockets in the ceiling, a cement floor and stood on a hill. This electric service was not furnished by the appellant and it was in no way connected with the ownership, management or control thereof. The appellant, however, was then engaged in extending telephone service from its line on Old State Road No. 3 to the Diekman Camp and in the process had set a number of poles but as yet had installed no wiring of any kind. The crew performing this work consisted of a foreman and three linemen of whom Ralph Davis was one. They were engaged in setting a pole about 75 feet distant from said tool house, which stood facing them with the door open, when it began to rain. In the course of a few minutes the rain increased in intensity

and was accompanied by thunder and lightning. Thereupon the foreman of the crew said, "lets get out of this" and ran to the appellant's service truck, which was parked about 25 feet away, and took refuge in the cab thereof. The three linemen sought shelter in the tool house where Davis stood under one of the light sockets above mentioned. Approximately five minutes later he was struck by a bolt of lightning and died immediately. The appellant company had no published rules or instructions governing the conduct of its outdoor employees during electric storms nor had its foreman been advised by the company in respect thereto. After the foreman said, "lets get out of this" each man was left to his own devices and was free to go where he pleased. The day was hot and humid and their work had caused the men to perspire somewhat and their clothes were damp from the rain.

The courts of Indiana always have drawn a distinction between the terms "out of" and in the "course of" the employment as used by the Workmen's Compensation Act and have held that both elements must be shown to exist before an award of compensation can be made for any accidental injury. Neither is sufficient without the other. *E. R. Burget Co.* v. *Zupin* (1948), 118 Ind. App. 644, 82 N. E. 2d 897; *Tom Joyce 7 Up Company* v. *Layman* (1942), 112 Ind. App. 369, 44 N. E. 2d 998. The present case presents no difficulties in connection with the essential that the accident which caused the decedent's death occurred in the "course of" his employment. The foreman's words "lets get out of this" must be construed as an instruction to seek shelter from the storm and the decedent's act in doing so amounted to nothing more than a temporary detachment from duty and in no way broke or suspended the course of his employment. However, when we come to the question of if and when

an accidental injury due to a true Act of God in the form of a bolt of lightning arises "out of" the employment we meet with a diversity of judicial opinion expressed by the courts of the land. See Anno: 13 A. L. R. 977; 49 A. L. R. 401; 46 A. L. R. 1218; 53 A. L. R. 1084; 83 A. L. R. 235.

In workmen's compensation cases it is well settled that "there must be some substantial link running from the employment, or one of its incidents, through the accident to the particular harm for which compensation is sought" if such accident is to be considered as having arisen "out of" the employment. Small, *Workmen's Compensation Law of Indiana*, § 6.2, p. 110. In other words the claimant must prove that there is a phase of causation between the employment and the injury or the claim will fail. *Dye & Son* v. *Nichols* (1924), 81 Ind. App. 13, 141 N. E. 259; *Luckey* v. *LaSalle Steel Co.* (1943), 114 Ind. App. 48, 50 N. E. 2d 883. This jurisdiction is committed to the doctrine that a man's employment cannot be the cause of an accidental injury due to lightning unless the risk or hazard thereof is increased, by reason of the employment, over that of anyone else in the vicinity not so employed. *Deckard* v. *Trustees of Indiana University* (1931), 92 Ind. App. 192, 172 N. E. 547; *E. I. Du Pont, etc.* v. *Lilly* (1948), 226 Ind. 267, 79 N. E. 2d 387. This doctrine has its origin in the fact that injuries resulting from exposure to the elements are risks to which any member of the general public is equally exposed and if there is to be any causal connection between the employment and the injury it must appear (1) that the employee's risk of being injured is greater than that of anyone not so employed, by reason of something peculiar or inherent in the employment itself, or (2) that the course of the employment puts the employee in a place that is more likely to expose him to injury from

the elements than would other places in the neighborhood. The first of these categories may be illustrated by the case of a workman who is struck by lightning while erecting a lightning rod on a barn. The very purpose of a lightning rod is to attract lightning and therefore his risk of injury is peculiar to and inherent in the employment itself and is greater than that to which the general public is exposed. The second category is illustrated by words, quoted with approval by this court in the Deckard case as follows: "If workmen are engaged in repairing the summit of the Washington Monument or the Eiffel Tower during a thunder storm and were injured by lightning while so doing, it would very properly be said that the risk in such employment of injury by lightning was greater than that of ordinary persons in Washington or Paris." The court concluded, however, that the standard test, to be applied to any set of facts, is always the same—"Did the employment increase the danger?"

In considering the Du Pont case this court expressly repudiated the increased risk doctrine and held that a causal connection between the employment and accidental injury by lightning sufficiently appears if the employment requires an employee to be at a certain place at a certain time and he is thereby brought in contact with lightning. *E. I. Du Pont, etc.* v. *Lilly* (1947), 75 N. E. 2d 796. However the Supreme Court granted transfer and in its opinion uses language which compels us to regard the increased risk doctrine as the law of Indiana. 226 Ind. 267, 79 N. E. 2d 387 (1948).

Applying the test of increased risk to the facts in the present case it is at once apparent that there was no risk inherent in and peculiar to the decedent's employment that had anything to do with his being struck by lightning. When so struck he was temporarily detached from his duties and any member of the general

public would have been subjected to the same risk had he been at the same place at the same time. The award, if it stands, must rest on a set of facts which brings it within the second category heretofore mentioned, that is to say, the course of the decedent's employment put him in a place that was a special target for lightning or at least more apt to be struck than other places in the vicinity.

The evidence discloses that in the course of the decedent's employment his clothes became wet through rain and perspiration; that he was placed in a tool house which had a cement floor and which was supplied with commercial electricity through wires connected with a transformer which were exposed to the elements and that his position in said tool house, which stood on a hill, was under an open light socket in the ceiling. There is no expert testimony, as there was in the Du Pont case, that these facts increased the risk but the Industrial Board, evidently considering that lightning and its action pattern is a matter of common knowledge, concluded that they did and so found. We are not prepared to say that expert testimony is necessary to support a finding of increased risk in lightning cases. It is a proper subject of expert testimony, of course, but many of the conditions that unduly expose people to being struck by lightning are so generally known that we believe that in many instances courts will take judicial notice of the increased risk occasioned by such conditions. It has been so held in many jurisdictions. *D. Luca* v. *Board of Park Commissioners* (1919), 97 Conn. 7, 107 Atl. 611; *Madura* v. *City of New York* (1924), 387 N. Y. 214, 144 N. E. 505.

Concluding that there is evidence in the record to support the award it must be affirmed.

NOTE.—Reported in 94 N. E. 2d 495.